UNITED STATES of America, Plaintiff–Appellee,

v.

Raymond S. HARDMAN, Defendant–Appellant,

Ute Indian Tribe of the Uintah and Ouray Reservation, Amicus Curiae.

United States of America, Plaintiff–Appellee,

v.

Samuel Ray Wilgus, Jr., Defendant–Appellant.

In the Matter of Joseluis Saenz, Claimant–Appellee,

v.

Department of Interior, Defendant–Appellant.

Nos. 99–4210, 00–4015, 00–2166.

United States Court of Appeals, Tenth Circuit.

Aug. 8, 2001.

Before TACHA, Chief Judge, and SEYMOUR, EBEL, KELLY, HENRY, BRISCOE, LUCERO, and MURPHY, Circuit Judges.

---

## ORDER ON REHEARING EN BANC

### PER CURIAM.

THE COURT has today simultaneously issued its opinions in the cases of *United States v. Hardman,* 99–4210; *United States v. Wilgus,* 00–4015; and *Saenz v. Dept. of Interior,* 00–2166. These cases present a number of inter-related—although not identical—issues and the en banc court has determined for purposes of consistency that these three cases should be reheard by the entire en banc court.

Accordingly, the court *sua sponte* orders en banc rehearing in *United States v. Hardman,* 99–4210; *United States v. Wilgus,* 00–4015; and *Saenz v. Dept. of Interior,* 00–2166. The panel opinions in these cases are vacated. It is anticipated that these cases will be reheard during the Court's November 2001 Term.

We request that the attorneys in each case brief and prepare to orally argue the issues listed below to the extent they are applicable to their case.[1] We request that the parties coordinate their briefing and argument to reduce the amount of unnecessary repetition. Each party's brief shall not exceed twenty pages in length,[2] and all briefs are simultaneously due by Friday, September 28, 2001. Each side in each case will be given ten minutes of argument time which may be combined among the cases if the parties believe that will improve the presentation.

---

1. Other issues may be addressed as well.

2. Only a brief summary of facts is necessary as the parties can assume that the court is familiar with their previously submitted briefs.

## ISSUES TO BE ADDRESSED
## AS APPROPRIATE

## I. LEGAL STANDARDS

A. *Free Exercise Clause standard*

1. *Does the RFRA or the First Amendment standard apply?* Does the Religious Freedom Restoration Act ("RFRA") apply in lieu of traditional First Amendment analysis whenever a person's religious exercise is substantially burdened by the federal government, even when the parties have not raised RFRA below or on appeal?

   a. What is the precedential value of *Werner v. McCotter,* 49 F.3d 1476 (10th Cir.1995), after *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)?

2. *Free Exercise Clause analysis: Smith safe-harbor, rational basis scrutiny, or strict scrutiny?*

   a. Are the Migratory Bird Treaty Act ("MBTA") and the Bald and Golden Eagle Protection Act ("BGEPA") neutral, generally applicable laws, thereby falling within the safe-harbor analysis of *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990)? *See also Swanson v. Guthrie Indep. Sch. Dist. No. I–L,* 135 F.3d 694 (10th Cir.1998).

   b. Given the unique guardian-ward relationship between the federal government and Native American tribes, should this court apply rational-basis scrutiny to the free exercise challenges to the Acts? *Cf. Rupert v. U.S. Fish and Wildlife Serv.,* 957 F.2d 32 (1st Cir. 1992); *Peyote Way Church of God, Inc. v. Thornburgh,* 922 F.2d 1210 (5th Cir.1991) (Establish-

ment Clause cases applying rational-basis scrutiny).

   c. *Strict Scrutiny*

   i. Are the Acts non-neutral or not generally applicable, thereby requiring this court to apply traditional First Amendment strict scrutiny as described in *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531–32, 546, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)?

   ii. Do the Acts establish "a system of individualized exemptions" such that, to be constitutional, they must survive the compelling state interest test described by *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)? *See Smith,* 494 U.S. at 883–85, 110 S.Ct. 1595.

3. *Comparison of RFRA and First Amendment standards:* In what ways, if any, does the "narrow tailoring" requirement of First Amendment strict scrutiny differ from the "least restrictive means" requirement of RFRA?

B. *Establishment Clause standard*

1. Given the unique guardian-ward relationship between the federal government and Native American tribes, what level and type of scrutiny should this court give to Establishment Clause challenges to the Acts? *Cf. Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

   a. Should this court apply rational-basis or strict scrutiny? *Cf. Rupert v. U.S. Fish and Wildlife Serv.,* 957 F.2d 32 (1st Cir.1992); *Peyote Way Church of God, Inc. v. Thornburgh,* 922 F.2d 1210 (5th Cir.1991) (Establishment Clause

cases applying rational-basis scrutiny).

b. Should this court apply the Establishment Clause test of *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), or one of its modern variants?

## II. APPLICATION OF THESE STANDARDS

### A. *Applicable Facts*

1. Are the records in *Hardman, Wilgus,* and *Saenz* sufficiently developed for this court to decide the issues relevant to each?

2. May this court take judicial notice that the Fish & Wildlife Service has proposed that the bald eagle be removed from the list of endangered and threatened wildlife in the lower forty-eight states? *See Proposed Rule to Remove the Bald Eagle in the Lower 48 States from the List of Endangered and Threatened Wildlife,* 64 Fed. Regulation. 36454 (July 6, 1999) (stating that "available data indicate that this species has recovered").

3. Given that the MBTA implements international treaties, *see* 16 U.S.C. § 703, may a district court find relevant facts to be used when determining the validity of the Act, or must courts use only facts found by Congress when the Act was passed?

### B. *Compelling State Interests:* What compelling state interests justify the MBTA and the BGEPA?

1. Given the present eagle population, is protecting eagles a compelling state interest?

2. Is fulfilling the federal government's obligations under international treaties like the MBTA to protect eagles a compelling state interest?

3. Does the federal government have a compelling state interest in fulfilling its trust and treaty obligations to Native Americans by preserving Native American culture and religion?

a. If so, does that obligation extend to permitting members of federally recognized Indian tribes to possess eagle parts?

b. Does the obligation extend to permitting ethnic Indians, but not members of federally recognized Indian tribes, to possess eagle parts?

c. Does the obligation extend to permitting exclusive access to eagle parts to one or both of these groups, but to no one else?

### C. *The "Fit" between the Acts and the Interests Offered to Justify the Acts*

1. Are the MBTA and the BGEPA the least restrictive means of furthering the relevant compelling state interest(s), *i.e.,* do they survive RFRA?

a. Does the Native American status of an adherent affect this analysis, *i.e.,* Saenz is a Native American while Hardman and Wilgus are not?

2. Are the MBTA and the BGEPA narrowly tailored to further the relevant compelling state interest(s), *i.e.,* do they survive First Amendment strict scrutiny?

3. Are the MBTA and the BGEPA rationally related to legitimate state interest(s), *i.e.,* do they survive First Amendment rational-basis scrutiny?

D. *Establishment Clause:* Do the MBTA and the BGEPA violate the Establishment Clause?

III. MISCELLANEOUS: Are there any relevant differences between the MBTA and the BGEPA such that we should analyze their effect on religious exercise separately?